W. T. CAMPBELL ET AL. V. W. H. MCFADDEN ET AL.

No. 46.

1. **Limitation—Specific Performance—Cause of Action.**—Action for specific performance brought June 8, 1885, upon a locative contract made in 1838 with agreement by defendant, the owner of the certificate, to make title as soon as "I shall obtain title." The certificate was located and field notes returned by plaintiff's ancestors to the Land Office in 1840. The survey was three-fifths upon an older grant. In 1846 the owner of the certificate repudiated the contract, sold to others, who entered upon the land, holding adversely to the locators. *Held*, that the limitation of ten years and of five years began to run upon the occupancy of the land adversely to their right against the locators, although they might not have had right of action against the owner of the certificate for specific performance.

2. **Repudiation of Contract for Location of Land.**—This contract was repudiated by (1) written notice to the locators in 1846; (2) sale of undivided half-interest, the purchaser entering and holding possession, asserting title to whole; (3) putting persons in possession to hold adversely; (4) partition of the tract, and (5) employment of an attorney to resist the claim of the locators. These facts evidenced a repudiation of the contract.

3. **Right to Sue.**—The locators had the right to sue trespassers or claimants adversely upon the land at once; they were not compelled to wait until patent had been obtained, or until their right to specific performance was perfected.

4. **Repudiation of Contract.**—A repudiation of a contract to convey land, coupled with notice, with adverse and continuous possession, with assertion of ownership in hostility to the claim and right of owners of equitable interests in the land, constitutes a breach of such contract, so that the cause of action upon the contract arises, and limitation is set in motion.

5. **Trust and Trustee—Locative Interest.**—The certificate having been located by the locators, and the land having been claimed by the owner of the certificate, the relation of trustee was assumed by the owner, and a repudiation of the contract for the location of the certificate could not of itself affect the property rights in the land held by the beneficiaries under such contract, upon their making such location and returning the field notes to the Land Office.

6. **Same—Revocation of Trust—Limitation.**—Where, from the relation of the parties to a contract to convey real estate a trust arises, such trust may be disavowed and repudiated. Such disavowal and repudiation, when fully brought to the notice of the beneficiary, sets the statutes of limitation and laches in operation.

7. **Limitation—Charge.**—The testimony showing a repudiation of the contract in 1846, suit being brought in 1885, it was proper to instruct the jury, under Revised Statutes, article 3209, that action for specific performance was barred in ten years from such repudiation. The Revised Statutes apply to the case.

8. **Incompetent Testimony.**—Where incompetent testimony has been admitted, but it is evident that it caused no injury to the losing party, it is no ground for reversal. See example.

9. **Specific Performance—Parties.**—The maker of the contract sought to be enforced is a necessary party in suit for specific performance, although he may have sold all his interest in the land. He can not, by disclaiming, make himself a competent witness to testify to statements of or transactions with the ancestor of the plaintiffs suing him as heirs.

10. **Laches.**—See facts where, independent of the statute of limitation, a court of equity should decline to enforce the contract on ground of laches. The contract was repudiated in 1846; the parties interested were notified; the values have changed, and the locators seemed to have abandoned the performance of the contract, and of claim under it. As to two-fifths of the land, patent could have been obtained by mandamus proceedings against the Commissioner of the Land Office. See details.

11. **Qualification of Judge.**—Nonresidence within the district does not disqualify a special justice, appointed by the Governor, the appointee being a citizen of the State, and otherwise qualified.

APPEAL from Williamson. Tried below before Hon. JOHN B. RECTOR, Special District Judge.

The opinion gives a full statement.

Chief Justice Fisher and Associate Justice Key being disqualified, the Governor appointed Hon. Beauregard Bryan and Hon. L. J. Brown, special judges.

*Peeler & Peeler* and *D. W. Doom*, for appellants.—1. By the terms of the contract, the defendant William McFadden could not be compelled to make conveyance until the issuance of the patent for the land, on the 21st day of July, 1884, and until that time plaintiffs' cause of action had not accrued, and nothing that William McFadden said or did, or could have said or done, in the way of repudiation of the contract after the location of the land by Halbert and Garner, and before the patent issued, would mature the contract or authorize the suit to be brought, nor set the law of laches or stale demand as a defense in motion. Campbell v. McFadden, 71 Texas, 28; Reed v. West, 47 Texas, 240; McKin v. Williams, 48 Texas, 92; McFadden v. Williams, 58 Texas, 625; Doss v. Slaughter, 53 Texas, 235; Rucker v. Dailey, 66 Texas, 284; Robertson v. Dubose, 13 S. W. Rep., 300.

2. After the location and survey and performance of the contract on the part of Nathan Halbert and David Garner, and after William McFadden had conveyed away an undivided one-half of the certificate and the land located thereby, either to Josiah Dyches, Jerusha McFadden, or to David H. McFadden, such vendees of said one-half and Halbert and Garner became tenants in common under the equitable title, and the only interest remaining in William McFadden was that of naked trustee for his vendees of the one-half, and for Halbert and Garner, who held the equitable title to the other half, and any possession on the part of the said William McFadden, or of those claiming under him, was for the benefit of his said vendees and the said Halbert and Garner, and could not be adverse to the said Halbert and Garner until the issuance of the patent on the 21st day of July, 1884, and as there was no cause of action in their favor until that time, the court erred in holding otherwise.

*A. S. Fisher, John C. Townes,* and *Walton, Hill & Walton,* for appellees.—1. Renunciation of a contract for nonperformance is tantamount, so far as cause of action is concerned, to a performance of it by the party whose duty it is to perform. Halbert and Garner did not perform. William McFadden did repudiate the contract with them, and did through himself, his vendees, and agents, acquire the land which Halbert and Garner did not acquire under the contract, if one existed. 3 Am. and Eng. Encyc. of Law, p. 90.

2. Halbert and Garner located the certificate on titled land, when the contract called for public domain. This was a breach, and McFadden had the then present legal right to withdraw from the contract, and this right continued so long as the breach existed.

3. The right of Halbert and Garner was an inchoate equity which rested on conditions precedent, that were never performed.

4. The breach or nonperformance by Garner and Halbert was in a vital part, viz: Instead of selecting public domain, they located the certificate on titled land. This breach discharged McFadden from the contract, if one existed.

5. Here there was no performance by Garner and Halbert. There was breach of a vital condition, a renunciation of contract by McFadden, because of nonperformance—actual possession, notoriously adverse for over forty years—the assertion of exclusive right as against adversaries, and the performance by the renunciators of the unperformed conditions precedent, the acquisition of title by affirmative acts notoriously and positively adverse to the rights of those under whom present plaintiffs claim.

BRYAN, SPECIAL JUSTICE.—This is an action brought on the 8th day of June, 1885, in the District Court of Williamson County, for specific performance of a written contract, which is as follows:

"By this instrument of writing I bind myself to make to Nathan Halbert and David Garner a quitclaim deed to one-half of the league of land to which I am entitled as a citizen of Texas, as soon as myself shall obtain a title for the same, to be divided equally in quality and quantity; and should I refuse to comply with this obligation, I authorize any court of justice to compel me to make the title as aforesaid; and by this instrument I authorize the said Halbert and Garner to enter upon said land and hold the same as his own property acquired by a just and legal title; the said Halbert and Garner to pay all the expenses of selecting, surveying, and clearing from the office my said title; as also the government fee for said land by the said Halbert and Garner, binding themselves to locate the said land, or as good land as they can find vacant, and paying to me the sum of fifty dollars.

"January 22, 1838.                    "WILLIAM McFADDEN.
"Witness:  "F. HARDIN.                "NATHAN HALBERT.
          "ABSALOM JETT."

Partition of the William McFadden league was also sought in the suit. Appellants, who were plaintiffs below, sued as the heirs of Nathan Halbert and of David Garner, except two of the appellants, W. T. Campbell and E. H. Lott, who claimed as assignees under Halbert and Garner. The appellees, who were defendants below, are William McFadden, David H. McFadden, and a number of other persons in possession of portions of the William McFadden league; also the Missouri Pacific Railway Company; but there was an adjustment of the litigation as between appellants and said company.

Appellants allege, that Nathan Halbert and David Garner complied fully with their part of said contract; that they located the certificate of William McFadden on vacant land, which is now in Williamson County, in 1840, and had the field notes returned to the General Land Office of Texas, and paid the government dues and all fees incident to the location, and paid to William McFadden the fifty dollars stipulated to be paid him in said contract; that a part of the location was on what was known as the Aguirre grant, and by reason of the apparent conflict, the government refused to issue patent thereon till in July, 1884, when the Supreme Court decided said grant to be invalid and void, and patent then issued on said location; that appellants could not procure the issuance of a patent sooner. Appellants further alleged, that said contract was proved up for record and duly recorded in Williamson County in 1854, and that William McFadden accepted as fully satisfactory to him the performance of the said contract by Halbert and Garner as above set forth; and that the said William McFadden and the said Halbert and Garner entered into actual possession of said survey, occupying the same as tenants in common, and continued so to do from the date of said location up to the time when the patent issued.

Appellants further alleged by way of excusing the delay in bringing their suit, that by the terms of the contract they could not maintain their action till patent was obtained, and that the issuance of the patent was refused by the Commissioner of the Land Office till 1884, for the reasons already stated; and further, that William McFadden was informed by Halbert and Garner, before the location was made, that it would be in conflict with what was known as the Aguirre grant, and that under the rules in the General Land Office it might be many years before a title could be obtained for him, and that with this knowledge he gave his full consent to the location as made; and that the delay in obtaining the patent has been with the consent and approval of William McFadden and those claiming under him; that Halbert died in 1867, and Garner in 1864.

Appellants further alleged, that by reason of some sort of conveyance of the league made by William McFadden to D. H. McFadden, the patent issued to said D. H. McFadden instead of William McFadden; and they further alleged, that William McFadden refused to perform said contract, and they made a tender in court of any money that might still be due from Halbert and Garner in fulfillment of their part of the said contract, if any should be found due, and they prayed for specific performance and for partitions.

Appellees answered by general and special exceptions, by general denial, and by special pleas. They pleaded non est factum as to the contract sued on, and attacked it as a forgery, William McFadden making his affidavit to that effect.

All the appellees joined in a special plea, in which they averred, that if the contract on which this suit is brought was in fact made or alleged by appellants, which is not admitted, but denied, that the said Halbert and Garner failed to perform their part of said contract, and instead of locating the certificate of William McFadden on vacant land, they located mainly upon the Raphael de Aguirre grant, and by field notes so imperfect that no patent could have issued thereon, had the conflict not existed, and they failed to procure a patent for the location; that William McFadden in 1844 sold an undivided half of the certificate and the land upon which it was located to D. H. McFadden; that William McFadden in 1845 first learned that the location was in conflict with the Aguirre grant, and at once informed Halbert and Garner that no title could issue on the location they had made by reason of said conflict and said defective field notes, and requested Halbert and Garner to raise the certificate and locate it on vacant land, and notified them that if they did not in a reasonable time float the certificate and relocate it on vacant lands, he would consider the contract canceled and at an end; that Halbert and Garner failed and refused to raise said certificate and locate it elsewhere, and that thereupon William McFadden repudiated said contract, and refused to recognize any right in said Halbert or Garner to any part of said survey; and that he immediately took exclusive possession of the entire

survey in open hostility to their claim, and thereafter sold it in parcels to various persons, who placed their deeds of record, and who went into actual possession and made valuable improvements thereon; that from and after 1846 Halbert and Garner abandoned all claim to the location and remained silent while the entire survey was appropriated by William McFadden, as aforesaid, and never for a period of about forty years, and until the patent issued, renewed their claim; that neither Halbert nor Garner, nor any one claiming under them, ever had said field notes corrected or took any steps to have the conflict removed, nor did they ever do any thing whatever thereafter to secure the issuance of patent on the location; and that appellees, by their own efforts and at their own expense, had said field notes corrected and said conflict removed, and at their own expense procured the issuance of the patent, in July, 1884.

Appellees further pleaded that the demand of appellants was a stale demand, and that they were guilty of laches. They also set up their respective interests in the survey, and pleaded the statutes of limitation, three, five, and ten years, and ten years' statute under article 3209, Revised Statutes, and valuable improvements made in good faith.

The appellee William McFadden answered further, separately, disclaiming all interest in the survey, alleging that he had sold and conveyed it away before appellants brought their suit.

Appellants in a supplemental petition excepted to the sufficiency of the answer of appellees, interposed a general denial, pleaded that appellees were estopped to set up the defective performance of the contract on the part of Halbert and Garner, by reason of the conflict with the Aguirre grant, if such was defective, because William McFadden not only consented before the location was made that it should be so made, but accepted it after it was made, and has ever since occupied it, claiming and enjoying his interest thereon. They further represented, that the correction of the field notes of the survey was unnecessary and did not materially change the location, and that the patent would have issued on the field notes of the survey as made by Halbert and Garner.

They further pleaded the disability of coverture of some of the appellants, and the disability of minority of others.

There are other matters alleged in the pleadings of the parties, but the testimony in the case related to the issues raised by the averments noticed, and the case was tried and decided upon those issues.

There was a trial by jury and a general judgment for all the defendants.

*Conclusions of Fact.*—1. William McFadden, who was entitled to a headright certificate for a league of land, as the head of a family, made a contract with David Garner and Nathan Halbert, on the 22nd day of January, 1838, to locate the same on vacant public land, they paying

all dues and expenses in locating and getting the title out of the government, and McFadden in the said contract bound himself to convey to them one-half of the league as soon as they should acquire the title for him, and Garner and Halbert were to pay McFadden $50, in addition to all government dues, expenses, etc.; and in 1841 McFadden made a power of attorney to Nathan Halbert, authorizing all necessary acts to procure title.

2. Said Garner and Halbert located the certificate in 1840, in what is now Williamson County, a large part of the location being in conflict with the Raphael de Aguirre ten-league grant, and the balance, about two-fifths, being on vacant lands, and they paid expenses of locating and the government dues for the land, and had the contract duly recorded in Williamson County in 1854. And at the time of filing, the attorney of William McFadden filed his protest as such attorney against the contract being filed and recorded.

3. The Land Office refused to patent the survey because of said conflict, and the Land Office persistently refused to patent same until July, 1884, when, by a decree of the Supreme Court, said Aguirre grant was declared to be null and void.

4. In 1845 William McFadden learned for the first time that Garner and Halbert had located his certificate in conflict, as stated, with the said Aguirre grant, and he then notified them that they must raise the certificate and locate it on vacant land, and he gave them till the following year to raise and relocate the certificate, and he informed them, if they failed by that time to do so, he would consider the contract he had with them at an end, and take his certificate in charge himself.

5. Garner and Halbert did not raise said certificate, but let it remain where they had located it, and William H. McFadden, in 1846, declared the said contract repudiated, and this is abundantly proved by evidence other than William H. McFadden, it being shown by the testimony of D. H. McFadden, that he conveyed a written notice of repudiation of the contract in 1845 to Halbert and Garner from William H. McFadden, and without raising the certificate, claimed the whole of the league as located. In 1844 McFadden sold an undivided half of said league of land either directly to D. H. McFadden or to some other person, who conveyed said half league to him or to his wife Jerusha McFadden, and in 1848 the league was, by a parol agreement between William McFadden and D. H. McFadden, partitioned; the west half being set apart to D. H. McFadden and the east half to William McFadden, and this appropriation of the entire league by William McFadden and his vendee was known to Halbert and Garner, they living it seems, at the time, within a few miles of the league partitioned. After said partition was made, neither William McFadden nor Halbert nor Garner made any claim to the west half of the league, but they all thereafter laid claim to the east half of said league.

6. In 1854, Garner by an executory contract sold a portion of the east half. Halbert in 1848 sold by a like contract a portion of it, and

he paid taxes regularly on half the league till 1859, and again in 1861. After 1869, no assertion of ownership to any part of the league was made by Halbert or Garner, or by those claiming under them, till this suit was filed, in 1885. William McFadden, from the date of the partition, claimed the east half of said league, denied that Garner or Halbert had any interest therein, and in hostility to their claim he kept one or more persons as his agents constantly on the land after the partition was made, occupying, using, and enjoying it, and the persons purchasing from Garner and Halbert also purchased the same land from him, McFadden. In 1852 William McFadden employed an attorney to clear said east half from the claim of Halbert and Garner, agreeing to give said attorney one-fourth of said east half as his fee in the matter. In 1870, William McFadden executed a deed to D. H. McFadden, as a substitute for the deed herein before alluded to as made in 1844, giving as a reason for making the substitution, that the deed of 1844 was lost, and had not been recorded. In 1872 William McFadden sold and conveyed to D. H. McFadden the league for $1660.50, with waranty of title against himself, his heirs and assigns.

7. D. H. McFadden in 1846 moved on to the league, and has resided on it ever since. He settled on the west half, and after the said partition, as before, made his home thereon. The deed of substitution of 1870 and the deed of 1872, made by William McFadden to D. H. McFadden, were duly placed of record in 1872, and D. H. McFadden, in 1876 or 1877, fenced about 1500 acres of the east half of the league.

8. That the appellees are in actual possession of the entire league, all of them claiming under William McFadden, some claiming under conveyances direct from him and others through mesne conveyances, all titles originating more than twelve years before this suit was filed; and the titles to more than half the league dating back more than twenty-five years before this suit was filed, under which actual possession was taken at the date of the titles; and valuable improvements were made on the several tracts; and the titles have been placed duly of record at periods ranging from twelve to twenty-five years before filing of this suit; and the right of possession of appellees and those under whom they claim has been during all said period in no way questioned by appellants or those under whom they claim; but that all the appellees had notice of the rights of appellants in the land.

9. In 1876 D. H. McFadden had the field notes of the land corrected, and the corrected field notes duly returned and filed in the Land Office; and the league was patented by these corrected field notes, which did not cover other land than that embraced in the original survey, and the correction made by the resurvey was immaterial and not necessary to the issuance of patent, and the patent issued to D. H. McFadden as assignee of William McFadden, and D. H. McFadden paid for the resurvey, also the patent office fees.

10. The plaintiffs in the suit tendered to the defendants payment of the $50 mentioned in the contract of date 22nd of January, 1838, and

interest from date of patent; also patent fee and interest, which was paid by defendants, and which by the terms of said contract Halbert and Garner were under obligation to pay.

11. Garner and Halbert never made any effort to remove the conflict between the Aguirre grant and the location of the league, and made no effort to obtain a patent for the league after the said partition was made in 1848.

12. On the 12th day of November, 1877, one Hanrick sued, in trespass to try title, D. H. McFadden for that part of the William McFadden league in conflict with the Aguirre grant, which was about three-fifths of the league. D. H. McFadden interposed as a defense the statutes of limitation, and on the trial recovered a judgment against plaintiff on said plea for all said land. Neither Garner nor Halbert were parties to this suit, and no part of the expense of the suit was paid by them or by any one for them; and by reason of the failure of Hanrick to recover the patent issued upon the affirmance by the Supreme Court of the case of Hanrick v. Cavanaugh, June 22, 1883, holding upon the verdict, that the Aguirre grant was a forgery. 60 Texas, 15.

As to the other issues of fact in the case, such as the actual value of improvements made on the land by appellees, no finding is made by this court, as the merits of the appeal are in no way affected by those issues.

*Conclusions of Law.*—The appellants assign a number of errors, which we will state here seriatim, with their subjoined propositions:

" First assignment of error: The court erred in permitting the appellees to offer in evidence and read to the jury the depositions of the witness F. P. Perret, as is shown by appellants' bill of exception number 1. Because, (1) there was no predicate laid showing that the law of Louisiana required a record to be kept of marriages in 1832 or 1833, the law of this State not requiring any such record to be kept at that time; and (2) because it does not appear from said depositions that said witness was or is the proper custodian of the marriage records of the parish of St. Mary, Louisiana.

" First proposition under the first assignment of error: The law of Texas, in 1832 and 1833, did not require a record of marriage licenses to be kept, and the defendants having failed to show that the law of Louisiana required such records to be kept at that time, and having failed to show that the witness was the officer whose duty it was to keep such records, his testimony to the effect that the records of his office failed to show the issuance of a marriage license to Nathan Halbert and Mary Clementine Bulrese was not admissible, and should have been excluded.

"Second assignment of error: The court erred in allowing the appellee to offer in evidence and read to the jury certain portions of the depositions of the witness William McFadden, as is shown by appel-

lants' bill of exceptions number 2, because this was an action by the heirs and legal representatives of Nathan Halbert and David Garner, deceased, against said William McFadden and others; said testimony was against said heirs and legal representatives, and related to transactions had with and statements made by said McFadden, Halbert, and Garner, and was admitted in evidence in direct violation of article 2248, Revised Statutes.

"First proposition under the second assignment of error: The assignment of error is in itself a proposition, and is submitted as such.

"Third assignment of error: The court erred in permitting the witness W. J. Jemison to testify as to the value of certain improvements situated on the land in controversy, as is shown by appellants' bill of exception number 3, because the question of improvements was not a proper subject of inquiry in this case, and because said testimony was immaterial, foreign to the issues, and was calculated to deceive and mislead the jury.

"First proposition under third assignment of error: This being an action for specific performance and partition, the questions of improvements and valuations were questions to be decided first by the commissioners of partition, and second, by the court on the report of the commissioners, and were not proper subjects of inquiry before the jury.

"The eighth, fourth, and fifth assignments of error will be considered together, and are as follows:

"8.   The court erred in giving number 6 of its charge to the jury, which paragraph is as follows:   'If the jury find that a contract of the character and between the parties named in the last paragraph above was entered into, and that Halbert and Garner performed their part thereof as indicated in said paragraph, and that afterwards William H. McFadden, by notice clearly brought home to Halbert and Garner, or either of them or their heirs or vendees, beginning at a time more than ten years before June 8, 1885, the time of filing this suit, openly repudiated the claim of Halbert and Garner to said land, and that such repudiation was continuous by him and his vendees for ten consecutive years from such beginning, and before the bringing of this suit, and evidenced by open possession of the land, then you are instructed that plaintiffs' claim is a stale demand and can not be enforced in this suit.'

"4.   The court erred in refusing to give to the jury appellants' special instruction number 1, which instruction is as follows:   'That the plea of stale demand can only be made available by defendants against the equitable title of plaintiffs during the time that defendants themselves held under a legal title, and that no legal title was vested in any one until the issuance of the patent to the land in controversy on the 21st day of July, 1884, and the lapse of time between that date and the 8th day of June, 1885, the date of bringing this suit, is not sufficient to support the plea of stale demand.'

"5. The court erred in refusing to give to the jury appellants' special instruction number 2, which instruction is as follows: 'That after the location and survey and performance of the contract on the part of Nathan Halbert and David Garner, if they did so perform it, William H. McFadden held the title to one-half of the land in trust for Halbert and Garner, but their right to enforce their equity by suit did not accrue until the issuance of the patent on the 21st day of July, 1884, and no declarations or acts of repudiation on the part of William McFadden between the location, survey, and return of the field notes to the General Land Office, and the issuance of the patent, can be effectual to repudiate the contract nor to mature the contract so as to authorize suit upon it.'

"First proposition under the eighth, fourth, and fifth assignments of error: By the terms of the contract, the defendant William McFadden could not be compelled to make conveyance until the issuance of the patent for the land, on the 21st day of July, 1884, and until that time plaintiffs' cause of action had not accrued, and nothing that William McFadden said or did or could have said or done in the way of repudiation of the contract after the location of the land by Halbert and Garner, and before the patent issued, would mature the contract nor authorize the suit to be brought, nor set the laws of laches or stale demand as a defense in motion.

"The ninth, tenth, seventh, and sixth assignments of error will be considered together, and are as follows:

"9. The court erred in giving paragraph number 8 of its charge to the jury, which paragraph is as follows: 'After William McFadden, in sales of said McFadden league, had sold one-half thereof, which were evidenced by possession or duly recorded instrument, then as to any subsequent sales by said McFadden you are instructed, that if one or more of said purchasers have had and held actual peaceable and adverse possession of the particular lands so purchased and claimed by them under title, or color of title, for three consecutive years prior to June 8, 1885, then you will find for such purchaser the land so claimed and held by him.'

"10. The court erred in giving paragraph number 10 of its charge to the jury, which paragraph is as follows: 'As to any subsequent sales by William McFadden of the character indicated in paragraph 8 above, after the sale by him of one-half the McFadden league, if you find that any such purchasers had peaceable and adverse possession of the land claimed by him, cultivating, using, or enjoying the same, and paying taxes thereon, and claiming under a deed or deeds duly registered for five consecutive years before the beginning of this suit, on June 8, 1885, then you will find for such defendant the land as claimed by him.'

"7. The court erred in giving to the jury appellees' special charge number 6, which charge is as follows: 'If you find William McFadden sold an undivided one-half of the land sued for, and that his vendee, or

the party purchasing from him, took possession of said land, holding and intending to hold the entire league for himself and the said William McFadden, adversely to said Halbert and Garner's claim, said Halbert and Garner having notice of such adverse holding, its purpose, and held such adverse possession for more than ten years peaceably and uninterruptedly before the bringing of this suit, and that such possession began before the death of Halbert and Garner, then you will return your verdict for all the defendants.'

"6. The court erred in refusing to give to the jury appellants' special instruction number 3, which is as follows: 'That after the location and survey and performance of the contract on the part of Nathan Halbert and David Garner, if they did so perform it, and after William McFadden had conveyed away an undivided one-half of the certificate and the land located thereby either to Josiah Dyches, Jerusha McFadden, or to David H. McFadden, such vendees of said one-half and Halbert and Garner became tenants in common under the equitable title, and the only interest remaining in William McFadden was that of naked trustee for his vendees of the one-half, and for Halbert and Garner, who held the equitable title to the other half, and any possession on the part of the said William McFadden, or of those claiming under him, was for the benefit of his said vendees and the said Halbert and Garner, and could not be adverse to the said Halbert and Garner until the issuance of the patent on the 21st day of July, 1884.'

"First proposition under the ninth, tenth, seventh, and sixth assignments of error: After the location and survey and performance of the contract on the part of Nathan Halbert and David Garner, and after William McFadden had conveyed away an undivided one-half of the certificate and the land located thereby, either to Josiah Dyches, Jerusha McFadden, or to David H. McFadden, such vendees on said one-half and Halbert and Garner became tenants in common under the equitable title, and the only interest remaining in William McFadden was that of naked trustee for his vendees of the one-half and for Halbert and Garner, who held the equitable title to the other half, and any possession on the part of the said William McFadden, or of those claiming under him, was for the benefit of his said vendees and the said Halbert and Garner, and could not be adverse to the said Halbert and Garner until the issuance of the patent on the 21st day of July, 1884, and as there was no cause of action in their favor until that time, the Court erred in giving paragraphs numbers 8 and 10 of its charge, and appellees' special instruction number 6 to the jury, and in refusing to give appellants' special instruction number 3."

From the view taken of the case by this court, only those assignments will be noticed at length which we conceive to be vital to the issues made by the facts of this case. This being an action for specific performance on the written contract herein set out in the statement of the case, and the defendants among other pleas having answered, that

plaintiff's cause of action, if any, accrued more than ten years before the bringing of this action, and under the statute was barred from being specifically performed, and the defendants having produced evidence to show that the contract of location as it existed between Halbert and Garner and William McFadden, had been rescinded and repudiated by McFadden, and defendants having also properly pleaded laches, the court below gave the charge which is covered by the eighth assignment of error. This charge of the court was further supplemented by a special charge requested by defendants, which was as follows:

"If you find William McFadden sold an undivided one-half of the land sued for, and that his vendees or the party purchasing from him took possession of said land, holding and intending to hold the entire league for himself and the said William McFadden adversely to said Halbert and Garner's claim, said Halbert and Garner having notice of such adverse holding and its purposes, and held such adverse possession for more than ten years peaceably and uninterruptedly before the bringing of this suit, and that such possession began before the death of Halbert and Garner, then you will find for all the defendants."

Charge number 6 given by the court, and complained of here in the eighth assignment of error, though not as full and complete as it might have been, and not one which we approve fully, still, taken in connection with the charges refused, squarely presents to this court the issue of when the cause of action accrued to Halbert and Garner, and as this is the controlling issue in this case, all others in our opinion being entirely subordinate, our first inquiry, is, can the statute be set in motion under a contract for locating land by open repudiation of the contract and adverse holding of the land before the legal title is completely in the owner of the certificate located, made so by the State issuing her patent to the located land?

"As the action for specific performance is strictly equitable, and as the performance of contract specifically is not a matter of right, but rests entirely in judicial discretion to be exercised according to settled principles of equity, but always with reference to the particular facts of the case" (Hennessey v. Woolworth, 128 U. S., 438), and as all the facts stand out conspicuously and clearly in this litigation from the inception of the contract to locate, in January, 1838, to the bringing of suit, on June 8, 1885, by plaintiffs, we will first examine into the nature of this particular contract, the conduct of the parties to it, their heirs and vendees.

Taken as a whole, the contract is one for the joint acquisition of land to be located, and not to purchase land. Gibbons v. Bell, 45 Texas, 417.

The terms of the contract are clear and unmistakable and couched in precise language. McFadden binds himself to make title by quitclaim deed so soon as he got title, and Halbert and Garner on their

part were to furnish the labor, skill, and expenses, and locate on vacant land and pay the sum of $50. The instrument went further, evidently for the benefit of Halbert and Garner, and authorized them to enter upon and hold as their own property the located land, as if acquired by just and legal title.

We have found as a fact, and it seems to be conceded by appellant, that William McFadden did rescind and repudiate this contract in 1846, and this is abundantly proven outside of his own testimony.

The methods employed by him were, (1) the written notice in 1845, that the contract was not complied with, and that the certificate must be located on vacant land, or he would have nothing more to do with them; (2) by sale of one-half of the league and then the other half, asserting ownership of the whole league; (3) putting persons in possession of the league to hold adversely; (4) the partition of the league; (5) the employment of an attorney to resist all acts of ownership asserted by Halbert and Garner.

All these acts of McFadden were openly and notoriously done, in defiance of Halbert and Garner's rights, and they were shown to be living within a few miles of the land in controversy, aware of all these proceedings and invasion of their rights.

The appellants' assignments and propositions in effect are, that McFadden or those claiming under him had to have a title by patent before suit could be maintained, and that title did not lie in McFadden or his vendees until patent issued; and further, it is in effect contended, that until all and every condition in a contract for specific performance is performed, the contract can not be repudiated and rescinded so as to set the statute of limitation and laches in motion, and that if an express trust arises, it can not be repudiated.

To neither of these propositions can we give our assent.

The cases cited by appellant are not in point. An inspection of these cases show that they were actions for specific performance, based upon contracts of bond for title or express contracts to convey when patent issued, and in none of the cases does it appear there were acts of rescission and repudiation, and a seizure in their own right of the land and open, hostile, continuous, and adverse holding for a period of more than forty years by the defendants, who were in possession, with deeds duly registered and recorded, as in this case.

The first case cited by appellants is the report of this case on a former appeal, 71 Texas, 28, where the court only considered the sufficiency of appellants' petition, to which a general demurrer had been sustained below. It was held the petition was good on the facts there alleged, and the reasons there stated for so holding are still adhered to. But that opinion was based upon the allegation that the defendants had acquiesced in all that Halbert and Garner did and were in possession of the land, recognizing their rights.

Judge Maltbie in rendering the opinion of the court in that case, in ordering it reversed, used the following language: "It thus plainly

appears from the allegations of the petition, that the location was originally made upon an expressed agreement with William H. McFadden that it should be upon the land in question, he being informed at the time that, according to the rules of the Land Office, a patent to the land could not then issue; that he has ever since recognized the validity of appellants' claim, and neither he nor his assigns have in any manner repudiated it, but have been in possession of their portion of it for many years, as tenants in common with appellants. It does not appear that it was in the power of appellants to have sooner procured the issuance of the patent, or that appellees have been injured, damaged, or inconvenienced, in view of all which we reverse the judgment."

The case now comes before this court with all the facts, is presented in a very different view, and requires a different holding adverse to appellants.

In every case cited by appellants, the doctrine of repudiation is recognized in considering when the cause of action accrued, and we believe the opinions rendered in those cases sustained the view here taken, viz., a repudiation of a contract to convey land, coupled with notice and adverse and continuous possession and assertion of ownership in open hostility to the claim and rights of owners of equitable interests in the land, constitutes such a breach of contract that plaintiffs' cause of action comes into being at once, and limitation is set in motion.

The appellants seek to avoid this conclusion by the proposition that McFadden could not be compelled to make conveyance until the issuance of the patent on the 21st day of July, 1884.

As the terms of the located contract in using words, "clearing from the office," clearly means procuring patent to consummate the contract, the question arises, could McFadden, after accepting the benefits of the location, repudiate and rescind so as to set the statute in motion, and was he a trustee holding as cotenant in trust the half of the league land?

We believe McFadden and Halbert and Garner occupied under the facts of this case this relation, viz., trustee and cestui qui trust, and their mutual rights and obligations must be considered in that light. Each seemed to be speculating on the chances that the Rafael Aguirre grant was void, and McFadden was trying to get title by adverse possession.

The legal title, though incomplete until patent issued, was in William McFadden, and Halbert and Garner possessed the equitable title to one-half undivided.

The appellants seize on the idea that, not being able to perform their contract fully by procuring issuance of the patent, because of the refusal of the Land Commissioner to issue, this was and is now sufficient excuse to avoid the plea of ten years statute and laches.

While equity recognizes the right of vendees to plead want of sufficient title, to avoid action for specific performance, we know of no law or authority that can or will excuse a vendee from obtaining title from his vendor.

"Though he has not complete title, a vendor can not be permitted to say that he did not intend to acquire title." 2 Warvelle on Vend., 766.

When William McFadden renounced the contract, it was tantamount to full performance on Halbert and Garner's part.

"When a party gives notice to the plaintiff that he will not complete the contract on his part, and abandons the agreement and refuses to perform, such refusal dispenses with the necessity of an offer or a readiness to perform on the part of the plaintiff, as it shows that such a step would be an idle ceremony. An offer and readiness to perform on the part of the plaintiff is enough, especially when the defendant refuses to convey at all. The performance of a condition precedent need not be averred where performance was waived or prevented by the party to be benefited." Willard's Eq., p. 297.

" If the action rests on a breach of the contract, it accrues as soon as the contract is broken, although no injury result from the breach of the contract." 3 Pars. on Con., p. 92.

Wherein after repudiation Halbert and Garner could not have maintained their action to make McFadden specifically perform by giving them a quitclaim deed, we are not informed, or cited to any case that holds such a doctrine.

There are expressions in the cases cited that cause of action accrued when patent issued, but those cases were under facts where the locator completed his contract by procuring patent and there were no acts of repudiation before the patent issued.

It is the well settled law of Texas, that a locative interest in land is good title. It is a vested right, and the government can not deprive the owner of it by refusing patent.

A locative interest is scarcely less marketable than a patented right. Such a title is the subject of sale and purchase. It is recognized by the government as property and not public domain. It gives a right which is the subject of possession, of purchase, and of inheritance. It confers the right to maintain a suit upon it, to try title, and eject trespassers. Hamilton v. Avery, 20 Texas, 630.

All the cases that have come under our observation maintain the doctrine, that where, from the relation of the parties to a contract to convey real estate, a trust arises, such trust may be disavowed and repudiated, and such disavowal and repudiation when fully brought to the notice of the cestui qui trust sets the statutes of limitation and laches in operation. 13 Am. and Eng. Encyc. of Law, 688; Wood on Lim., sec. 213; Speidel v. Henrici, 120 U. S., 386; Riddle v. Whitehill, 135 U. S., 621; Rucker v. Daily, 66 Texas, 284; Brotherton v. Weathersby,

73 Texas, 472; Boon v. Chamberlain, 82 Texas, 480; Reynolds v. Sumner (Ill. Sup. Court), 1 L. R. A., 327.

Mr. Story, in his work on Equity, volume 2, sections 1520 and 1520a, says: "It is often suggested that lapse of time constitutes no bar in cases of trust. But this proposition must be received with its appropriate qualification. As long as the relation of trustee, cestui qui trust, is acknowledged to exist between the parties, and the trust is continued, lapse of time can constitute no bar to an account or proper relief for the cestui qui trust.

"But where this relation is no longer admitted to exist, or time and long acquiescence have obscured the nature and character of the trust or the acts of the parties, or other circumstances give rise to presumption unfavorable to its continuance, in all such cases a court of equity will refuse relief upon the ground of lapse of time and its inability to do complete justice. This doctrine will apply even in cases of expressed trust." See also Perry on Trusts, sec. 864.

Wood on Limitations of Actions, section 213, page 434, says: "The rule that a direct and technical trust is not within the operation of the statute is subject to two exceptions; First, that no open denial or repudiation of the trust is brought home to the knowledge of the cestui qui trust, which requires him to act upon an asserted adverse title."

To the same effect is the same authority, section 212.

There can be no question in this case that there was such disavowal and repudiation by William McFadden and his vendees as far back as 1846.

Holding as we do that plaintiffs' cause of action, looking at it from any view, accrued more than ten years before the bringing of this suit, on June 8, 1885, and as the Revised Statutes, article 3209, prescribes, that "Any action for specific performance of a contract for conveyance of real estate shall be commenced within ten years next after the cause of action shall have accrued, and not afterwards," we decide, that there was no error in the sixth charge of the court, and the charges asked were properly refused.

"Instead of the equitable defense of stale demand, the legal defense of limitation is now applicable." Boon v. Chamberlin, 74 Texas, 663.

That this statute applies to all actions for specific performance of contracts to convey real estate brought after the adoption of the Revised Statutes of 1879, though the contracts were made long prior to the enactment of said statutes, is held in Boon v. Chamberlain, 82 Texas, 480; and having thus commenced to run during the life-time of Halbert and Garner, it is not affected by the coverture or other disabilities of the plaintiffs in this suit (Shortridge v. Allen, 2 Texas Civil Appeals, 197); nor is its application changed by the fact that by analogy to that statute of limitation it was suspended during the period intervening between the 28th day of January, 1861, and the 3rd day of December, 1869. Cattle Co. v. Ward, 1 Texas Civ. App., 307.

Considering that there could have been no other legitimate disposal of the case than a judgment for the defendants, we affirm the case.

It is not necessary to notice the other assignments of appellants, except to say that we consider it error to admit the deposition of the witness Perritt, for the reason assigned.

The first error assigned is in substance, that the court erred in allowing appellees to read in evidence, over appellants' objection, the deposition of F. P. Perritt, clerk of the court of the Nineteenth Judicial District, Parish of St. Mary's, Louisiana, to the effect, that the records of his office do not show that any marriage license was issued to Nathan Halbert and Mary Clementine Bulrese in 1832 or in 1833, or at any other time, the objection to the introduction of the testimony being, that no predicate was laid to admit it; that is, it was not shown that the law of Louisiana in 1832 or in 1833 required a record to be kept of marriage licenses issued, the law at that time in force in Texas requiring no such records to be kept, and it was not shown that at the dates mentioned the office of said clerk was the proper place to record marriage licenses so issued in St. Mary's Parish, Louisiana.

One of the issues of fact in the case was as to whether or not Mary Clementine Bulrese and Nathan Halbert were man and wife, so as to make their offspring the lawful heirs of said Halbert. The plaintiff proved by the said Mary C. that she and said Halbert were married in St. Mary's Parish, in Louisiana, in 1832. The testimony objected to was evidently offered to rebut said proof.

As to those plaintiffs claiming as heirs of Davis Garner, no question was made as to their being heirs of said Garner. The rights of those plaintiffs rested on precisely the same grounds as did the plaintiffs who sued as heirs of Nathan Halbert, and the verdict was general, and for defendants. Conceding, therefore, that the admission of the testimony objected to was error, still it does not appear to have in any way influenced the action of the jury, and was harmless.

Also we believe it was error to admit the deposition of William McFadden. His filing a disclaimer did not make him less a party to the suit, after answering fully, as he did, with all defendants, and filing a plea of non est factum.

In fact William McFadden was a necessary party to this suit, it being one for specific performance of contract executed by him.

The authorities are united in holding, that in actions for specific performance of real estate, that the necessary parties defendants are the makers of the contract and his vendees.

But if we should be mistaken in our view that plaintiffs' cause of action is barred by the ten years' statute, still we think they can not maintain this action in a court of equity, as from the facts here presented laches is imputable to them.

We are constrained to hold, that no court of equity can lend an attentive ear to the enforcement of such a claim as this, however originally equitable, after the lapse of more than forty years.

To enforce performance now, after such a change in the value of the property and the situation of the parties, would violate that rule which holds that specific performance will not be granted when, by the changed condition of affairs, hardship, injury, and damage would be worked.

While time ordinarily is not to be taken into consideration in the specific performance of contract, without so expressed in the contract, it must be in this State, as lands are rapidly rising in value, and it must be presumed that the parties had this in contemplation. Edwards v. Atkinson, 14 Texas, 374.

In this case, the land was worth at the time of location only a few hundred dollars, and in 1885, when suit was filed, it had increased tenfold, and was worth many thousands of dollars. It was on the frontiers of Texas, in the wilderness, when located; it is now in the heart of a highly civilized and thickly settled community in the heart of Texas.

It is one of the maxims of equity, that he who desires specific performance of contract, must be in the exercise of diligence, must be prompt, and ready to perform.

Here, while insisting on their equitable rights to one-half of the league, Halbert and Garner took no action to complete their contract by procuring the issuance of the patent, and died without ever completing that contract. We quote with approval from Willard's Equity, page 291, the following from his chapter on Specific Performance:

"The plaintiff who seeks for the specific performance of an agreement must show that he has performed or offered to perform on his part the acts which formed the consideration of the alleged undertaking on the part of the defendant. For if the plaintiff will not, or through negligence can not, perform the whole on his side, he has no title in equity to the performance of the other party, since such performance could not be mutual. It is upon similar reasoning that where the plaintiff has shown a backwardness in performing his part of the contract, equity will not decree a specific performance in his favor, especially if circumstances are altered. The rule which withholds the aid of a court of equity from a party who has been guilty of negligence in performing his own part of the agreement is founded in the soundest principles of policy and justice. Its tendency is to uphold good faith and punctuality in dealing. The notion that a party may disregard his own part of a contract and obtain relief in equity from the penalty of his gross negligence is injurious to good morals, to a lively sense of obligations, to the sanctity of contracts, and to the character of the court. The maxim 'vigilantibus non dormientibus leges subveniunt,' is not without good sense in its general bearing, but has peculiar force and pertinence in a case where specific performance of agreements is sought. In a country where the value of real estate is fluctuating, and where competition, enterprise, and speculation are constantly changing the relative value of property, parties ought not

to be permitted to lie by and speculate on their own contracts, fulfilling them if advantageous, or disregarding them if their interest seems to lead in that direction. Accordingly, if the plaintiff has been guilty of gross laches, or if he has not applied for relief until after a long lapse of time, unexplained by equitable circumstances, his bill will be dismissed."

That they might have mandamused the Land Commissioner and caused the patent to issue is decided in Land Commission v. Smith, 5 Texas; and this, though the McFadden location was, or seemed to be, in conflict with the Rafael Aguirre grant. Smith v. Power, 2 Texas, 72.

It seems from article 4316 of Paschal's Digest, Acts of 1840, that where there is conflict in surveys the Land Commissioner is authorized and required to issue on that part not in conflict, and as two-fifths of the McFadden survey was not in conflict, then Halbert and Garner might have procured patent on that portion.

If Halbert and Garner could have thus perfected the title to the land, they can not be permitted to defer limitation and laches, when charged against them.   13 Am. and Eng. Encyc. of Law, 726.

We believe further, from the acts of the parties to this contract, it was regarded as abandoned, as it is shown that all acts of Halbert and Garner in asserting claim to the land were rendered abortive by the aggressive resistance of William and D. H. McFadden, and that thereafter they died, asserting no further ownership, apparently acquiescing.

There being no reversible errors, the judgment is affirmed.

<em>Affirmed.</em>

Delivered January 9, 1894.

ON MOTION FOR REHEARING.

BRYAN, SPECIAL JUSTICE.—The motion for rehearing filed in this cause requests the court, in the event the motion is overruled, to disclose in its order overruling the motion that Beauregard Bryan, one of the special judges sitting, resided in Brenham, Washington County, Texas, and not within the Third Supreme Judicial District, and that he and Associate Justice Collard constituted the court that rendered the opinion in this case.   As the motion for rehearing in this case is overruled, the questions raised in same being hereafter noticed, we comply with the request of appellants in making additional findings of fact, as follows, to wit:

1.  That Beauregard Bryan, who sat as special judge in the above cause, was at the time of his appointment and at the time of his qualification and all the time of his service, and is now, a resident of Brenham, Washington County, Texas, and is not a resident of the Third Supreme Judicial District of Texas.

2.  That Associate Justice L. H. Brown, specially appointed with Justice Bryan, did sit in all the trial of this cause, and participated in

and concurred in the decision of all the questions in the case in conjunction with Justices Collard and Bryan, but Justice Brown was not present when the opinion was delivered. Justice Brown was present and heard the case submitted for rehearing and participated in the same, and was present with Justices Collard and Bryan when the motion for rehearing was overruled, and this decree entered and facts found.

*Conclusions of Law.*—The only question we deem necessary to discuss in the motion for rehearing is the one made, that specially appointed Justice Bryan is disqualified to sit in this case, because he was not a resident of the Third Supreme Judicial District.

We do not believe this position well taken. The Constitution and the statute creating the Courts of Civil Appeals do provide that the permanent members of the court elected should be resident citizens of the district, but are silent as to the qualifications of the persons selected and commissioned by the Governor to sit as special judges, except that both the Constitution and the statute creating the Courts of Civil Appeals say: "When the Courts of Civil Appeals or any member of either shall be thus disqualified to hear and determine any case or cases in said court, the same shall be certified to the Governor of the State, who shall immediately commission the requisite number of persons learned in the law for the trial and determination of such case or cases." This language is broad and general, and not restrictive, and does not limit—except in the particular named, to wit, that he shall be learned in the law—the qualifications of the person appointed. We believe, therefore, that Justice Bryan, though he resided outside the Third Supreme Judicial District, was not disqualified. But if he were, this question should have been raised in limine. Schultze v. McLeary, 73 Texas, 94.

The motion for rehearing is overruled.

*Overruled.*

Delivered February 6, 1895.